IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THOMAS W. SMITH,                    :
            Plaintiff,              :
        v.                          :    Civil Action No. 04-07J
PAGE FOAM CUSHIONED PRODUCTS        :
COMPANY, INC.,                      :
            Defendant               :

**Report and Recommendation**

Recommendation

Pending is defendant's motion for summary judgment. docket no. 10.   I recommend that it be granted.

Report

Thomas W. Smith filed a complaint against his former employer, Page Foam Cushioned Products Company Inc. (Page Foam), alleging that his termination on September 18, 2002, when he was 66 years old, violated the Age Discrimination in Employment Act, 29 U.S.C.§§ 621-34 (ADEA).

In accordance with Local Rule 56.1(B)(1), in support of its motion defendant filed a brief, docket no. 11, with a concise statement of facts at id. 5-17.  Plaintiff filed a response, docket no. 13, brief, docket no. 14, and exhibits, docket no. 15, which taken together adequately show that, while there are diametrically opposed interpretations of the facts, there are few disputes of material fact.

I

Smith was born on March 23, 1936.  docket no. 11, Exhibit B, Smith depo. at 9.  He began working for Page Foam in 1971 as a

cutter and he remained in this position until his termination.  id. at 33.  At all times, he was an at-will employee.  docket no. 11, Exhibit T, Admission No. 1.

Page Foam is a fairly small, family-owned business that manufactures and sells foam cushioned products.  Both the manufacturing and sale of the products take place in a one-building facility located in Johnstown, Pennsylvania.  docket no. 11, Exhibit C, Tim Page depo. at 56.  The factory portion of Page Foam is located in one large area consisting of the following five departments: cutting, sewing, stuffing, inner-spring and freight. id. at 16-18.

Through September 2002, the cutting department was composed of three cutters, one general laborer and one supervisor or "lead" person.  A cutter's job is to cut a pattern out of fabric on a long table.  Then a laborer collects the cut fabric, marks it, puts the pattern on the shelves for the sewers, and cleans up the fabric debris.  Page depo. at 12; Smith depo. at 17-19.  The cutters were Smith, Joe Ragno and John Hrbal, the general laborer was Barb Plummer and the lead person was Ester Johns.  Greg Dyda was the production manager and supervisor of all departments. id. at 13, 16-17; docket no. 11 Exhibit F, Dyda depo. at 7.

Smith's termination arose out of his interaction with the laborer in his department, Plummer, age 33.  Smith had been friends with Plummer at one time.  He stated that one day she came in and

didn't like him and he denies having any idea what caused a rift between them.  Smith depo. at 14.  In approximately 2000, Plummer began making complaints about Smith's behavior to Dyda and Tim Page, who is the Purchasing Manager and Vice President of Page Foam.  Page depo. at 6.

Dyda testified that he received numerous complaints from Plummer about Smith's behavior.  For example, on one occasion she came in visibly shaking because she said he had written a vulgar term next to the date of her birthday on the company calendar. Smith also refused to push the cut fabric across the table, requiring Plummer to come around the table to get it.  Dyda depo. at 7-8.  Dyda had a number of discussions with Smith about his behavior toward Plummer.  Dyda depo. at 9-11, 14-15.

On July 14, 2000, Plummer and Linda Clark, another laborer in the cutting department, brought a piece of fabric to Dyda's attention.  Smith had written the words "dumb and dumber" on it and they believed he was directing an insult to them.  Dyda turned the matter over to management.  docket no. 11, Exhibit G, Dyda affidavit at 1.  Tim Page conducted an investigation and wrote up a summary of his meetings with the witnesses.  docket no. 11, Exhibit J.  Tim Page, Greg Dyda and Bob Trotz, a senior plant manager, met with Smith.  Smith acknowledged that he had written the words on the fabric, but claims that any implied comment was directed at himself and Joe Ragno, docket no. 14, plaintiff's Brief

at 3, and that the words were a doodling referring to the movie of
the same title.  Smith depo. at 16.  Smith provided the doodling
explanation during a meeting with Tim Page on September 17, 2002.
docket no. 11, defendant's brief, Exhibit O at 2.  Page stated at
his deposition that he did not believe Smith's first explanation,
that the comment was directed toward Ragno, docket no. 11, Exhibit
H, because the message referred to two people and because the piece
of cloth was left in a location where no one other than the two
women would have seen it.  Page depo. at 38, 58.  Page told Smith
that it did not matter to whom the comment was directed and that
such behavior would not be tolerated.  He called Smith's attention
to the disciplinary policies in the Employee Handbook, which Smith
had received and was responsible for reviewing.  See docket no. 11,
Exhibit I.  Smith said that he wrote the comment on his break time,
and Page responded that this was irrelevant, and suspended Smith
until the matter could be discussed and appropriate disciplinary
action determined.  docket no. 11, Exhibit H.  On July 18, 2000,
Page issued a disciplinary report warning Smith about violating
company policy.  Smith did not  agree with the basis for the
warning, but he signed the form acknowledging that he had received
it.  Page depo. at 36-38; docket no. 11, Exhibit K.

After the July 2000 incident, Dyda told Smith to act in
a less offensive manner toward his co-workers.  Smith depo. at 40.
Smith stated that he essentially did not speak to Plummer for two

4

years after this incident.  id. at 15, 41-42.

Ester Johns, as the lead person in the cutting department, received several complaints from Plummer about Smith not pushing his work across the table, as well as about Smith bothering Plummer by ostensibly talking to himself in a way that could be understood to refer to Plummer; Johns stated that because the cutting department was so small Smith's behavior affected the work being completed.  Johns depo. at 6-11.  Dyda also stated that Smith's behavior disrupted the work environment and slowed down production, Dyda depo. at 10, and that he gave Smith repeated oral warnings about his behavior.  id. at 11-14, 18.

The issue of Smith refusing to push the cut fabric across the table to permit Plummer to reach it continued to be a problem. Dyda affidavit; Page depo. at 21-22, 26; docket no. 11, Exhibit L, Johns depo. at 7-8.  John Hrbal, another cutter, stated that he was aware of an ongoing problem between Smith and Plummer over Smith's not pushing his work across the table.  docket no. 11, Exhibit M, Hrbal depo. at 9-10.

On August 28, 2002, Dyda issued a disciplinary report to Smith directing him to push his work across the table to Plummer, which Smith received and signed.  Dyda depo. at 11-14, 18; Page depo. at 21-22, 26; docket no. 11, Exhibit N.  Smith believed that the directive from Dyda to push his work across the table was a mere "suggestion" and not an order.  id. at 12, 21-22, 59-60.

After the August disciplinary report, Smith wanted to have a meeting with Tim Page to discuss what he perceived as unfair treatment.  Smith depo. at 55.  Page and Smith met on September 17, 2002, to discuss the August report and the ongoing conflict between Smith and Plummer.  Page depo. at 22-24; Smith depo. at 52-60.

At the meeting, Tim Page testified, Smith told him that he could either: 1) put $75,000.00 in Smith's profit-sharing plan and he would retire immediately; or 2) move Plummer out of the cutting department, and if neither event occurred Smith would "go back to acting the way he used to," which Page interpreted to mean that Smith would return to harassing Plummer.  Page depo. at 22-24, 29-30.  Page testified that Smith also stated that, although he was not "threatening" the company, "he does have the best thing going for him, his age" because he was over 65.  Smith felt he was being harassed because Dyda did not discipline other employees, only him.  Tim Page summarized his meeting notes immediately afterward.  id. at 22-25; docket no. 11, Exhibit O.

Smith testified that he did not recall mentioning any specific amount, but that he did say in effect that if he had enough money in his profit sharing account he would retire that day.  Smith depo. at 55.  Smith also testified that what he meant by returning to the way things used to be was "I was going to start talking to her and be nice to her, like Greg suggested."  id. at 56.

6

Later that same day, September 17, 2002, Joe Ragno, whom Smith described as a friend, Smith depo. at 45, reported to Dyda that he had seen Smith put "boogers" on the table where Plummer worked.  Dyda depo. at 14-16; Page depo. at 24. Smith denied and denies the "bodily fluid" accusation made by Ragno.  Smith depo. at 45.  Ragno also told Tim Page about Smith's behavior.  Page depo. at 24-25.  Page asked Ragno to put his complaint in writing and sign a statement, which Ragno did the next day.  The statement indicated that:

Tom Smith informed [me] that the only reason he was still working (past 65) was to make her (Barb Plummer['s]) life miserable.  There were also instances of offensive behavior that [I] witnessed.  Such as, Tom putting boogers on machine parts he knew Barb would touch, and putting scissors down his pants and telling [me] that "now she had to touch his sweat."  Finally, Tom informed [me] that come Monday (9-23-02) he would start calling [B]arb a "whore" because it was his 1st Amendment right.

docket no. 11, Exhibit P.

Page was aware of the issue involving pushing work across the table, but did not hear about this additional conduct until Ragno made his complaint.  Page depo. at 21-22, 26-27.  After receiving the complaint, Page conferred with Greg Dyda but took no further investigation and did not interview Plummer.  He spoke with Trotz and Walter Page (Tim's father and the president of Page Foam).  id. at 50-51.  Page found Ragno to be credible, and doubted Smith's credibility after the July 2000 "dumb and dumber" incident.  id. at 38.  Collectively, Page, Trotz, and Walter Page agreed that Smith should be fired.  id. at 50-51.

At the end of shift on September 18, 2002, Page, Trotz and Dyda met with Smith in Page's office, and Page informed Smith that he was being terminated based upon Ragno's complaint about his behavior, and based on his failure to comply with company directives, particularly pushing his work across the table. See Dyda Affidavit; docket no. 11, Exhibit Q (Page memorandum). Smith denied Ragno's accusation, Smith depo. at 28.

Page posted Plaintiff's position after his termination. docket no. 11, Exhibit U. Two individuals, Richard Barr and Don Chappell, both of whom are younger than Plaintiff, bid the position. Page depo. at 14-15.; docket no. 11, Exhibit V. Neither Barr nor Chappell permanently took Smith's position. Page depo. at 14-15; docket no. 11, Exhibit W, Donald Goughenour depo. at 10.

Smith is not aware of any other employees who were terminated from Page Foam because of their age and admitted that Coletta Wilt, who was 88 years old in September 2002, was still employed at Page Foam when Smith was terminated. Smith depo. at 28-29. Page Foam also employed Dolores Rager, 72 years old at the time Smith was fired. Page depo. at 54-55. A list of the ten employees involuntarily terminated by Page Foam in 2000-03 is at docket no. 11, Exhibit R. There is no claim that it shows any pattern of terminating older workers.

II

Summary judgment is appropriate if the pleadings,

8

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Woodside v. Philadelphia Board of Education, 248 F.3d 129, 130 (3d Cir. 2001) (internal quotations and citations omitted). The court must construe the facts in the light most favorable to the non-moving party. Doe v. Centre County, 242 F.3d 437, 446 (3d Cir. 2001).

Since Smith bears the burden of proving that he was terminated because of his age, Page Foam may present a prima facie case for summary judgment by "pointing out to the District Court [] that there is an absence of evidence to support the non-moving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Smith is then required to "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986): he must show that a reasonable factfinder might, following the applicable substantive law, return a verdict for him. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). The substantive law is that it is an unlawful employment practice for an employer to discharge or discriminate against any individual because of such individual's age if that individual is over 40. 29 U.S.C. §§ 623(a), 631(a). A plaintiff may establish a prima facie case of discrimination indirectly by following the shifting burden paradigm

9

set forth by the Supreme Court in <u>McDonnell Douglas v. Green</u>, 411 U.S. 792, 802 (1973) and in <u>Texas Department of Community Affairs v. Burdine</u>, 450 U.S. 248, 252-53 (1981). <u>See</u> <u>Chipollini v. Spencer Gifts, Inc.</u>, 814 F.2d 893, 897 (3d Cir. 1987) (en banc). A plaintiff must establish that he is at least 40 years of age, that he is qualified for the position, that he suffered an adverse employment decision and that he was replaced by a sufficiently younger person to create an inference of age discrimination. <u>Showalter v. University of Pittsburgh Med. Ctr.</u>, 190 F.3d 231, 234 (3d Cir. 1999). The employer must then "articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." <u>McDonnell Douglas</u>, 411 U.S. at 802. The employee must then show that a reasonable person could find that this reason for the adverse employment action was a pretext for age discrimination. <u>See</u> <u>id.</u> at 804. As the Court of Appeals for the Third Circuit has stated:

> [T]o avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder to reasonably infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext).

<u>Fuentes v. Perskie</u>, 32 F.3d 759, 764 (3d Cir. 1994) (citations omitted).

There is no dispute Smith was over 40, was qualified to perform his job, and suffered an adverse employment action when he was terminated on September 18, 2002. With respect to the final

element of the prima facie case, Page Foam contends that Plaintiff
was not really replaced by two younger individuals because both
Richard Barr and Don Chappell were temporary employees who were
laid off and the position was left unfilled.  Logically, defendant
is correct: when an employer posts a vacant job for internal hire,
it is not directly replacing the employee formerly in the post, it
is allowing employees already hired (presumed to have been hired
without discrimination) to fill the position.   If there was
evidence of age discrimination in the discharge, the youthful age
of the person who fills the post cannot create such evidence; if
there was age discrimination in the discharge, the greater age of
the person filling the post does not negate such evidence.  The
three step paradigm was originally used in cases where the number
of persons hired was sufficient to make disparities in race
significant enough to allow an inference of intent: following it
slavishly in cases of the hiring, promotion, discipline, or firing
of a single employee is foolish.  Nonetheless, as lower tribunals
this court and the Court of Appeals are bound to apply the law as
it is, and the law is clear that even temporary replacement of a
worker in the protected class by a person significantly younger is
enough to satisfy the undemanding first step of the McDonnell
Douglas/Burdine analysis.  See generally Keller v. ORIX Credit
Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997) (en
banc)(stating a preference for resolving matters at the third step

11

of the paradigm).

Page Foam offers a legitimate, non-discriminatory reason for Smith's termination by pointing to the history of incidents involving Smith harassing Plummer, the history of meetings with management to discuss this issue, and Smith's refusal to comply with directives to push his fabric across the table.

Smith therefore must point to evidence from which a reasonable finder of fact could conclude that the proffered reasons for his termination are not worthy of belief. Smith challenges the neutrality of the decision to terminate his employment based on the alleged harassing incidents by pointing out that he was the only one punished despite the fact that he and Plummer were both hostile to one another. See Keller, 130 F.3d at 1108-10. In support, Smith cites portions of the depositions of John Hrbal and Ester Johns in which they state that Smith and Plummer "did not get along" with each other, Hrbal depo. at 9; Johns depo. at 8, and a portion of Page's July 17, 2000 memo, docket no. 11 Exhibit J, in which he wrote that:

he understands that there have been many problems between all three mentioned employees and that at some point all have been guilty. Barb was warned that she needs to watch her language when around other employees. Every employee deserves the right to work in a harassment free environment just like her and language can be considered offensive.

However, Plummer being warned to watch her language does not amount to evidence that Plummer was harassing him the way Smith was accused of harassing Plummer. Smith does not even allege that

Plummer harassed him, much less that he complained about it and his complaints were not addressed, until the day before he was fired, September 17, 2002.

John Hrbal was aware of the issue of Smith not pushing his work across the table to Plummer. Hrbal depo. at 10. Ester Johns also reported this action of Smith to Greg Dyda, as well as some remarks Smith made about Plummer and the "dumb and dumber" incident. Johns Dep. at 7, 9-10. Smith admits that he did not push his work across the table, offering the explanation that he thought it was a suggestion and not an order. Smith depo. at 69. Even if a reasonable factfinder accepted this explanation, however, Smith shows only that Page made a mistake in believing Smith understood it to be an order, Page depo. at 21-22: it does not show how this translates into age discrimination.

Finally, despite Smith's suggestion, docket no. 14 at 11, that the "petty conduct" he was alleged to have engaged in is consistent with the normal course of conduct for employees at Page Foam, Dyda's deposition testimony that "there's so much petty crap I put up with there. It drives me nuts," Dyda also went on to say that he had to address Plummer's complaints because Smith's actions were interfering with her getting her work done, and that unlike a general atmosphere of "petty crap," Ragno brought specific complaints to him about Smith's behavior. Dyda depo. at 9-10, 15, 19. Moreover, the decision to terminate Smith's employment was not

13

made by Dyda, but primarily by Page, with input from Dyda, Walter Page and Trotz, and Page indisputably heard complaints about Smith, not about Smith and Plummer equally.

Smith denies the September 18, 2002 accusation made by Ragno, noting that no one else witnessed anything, even though the plant is one big open room. A factfinder could properly find Smith truthful, Ragno not credible, and Page mistaken. The Court of Appeals has held, however, that "the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Fuentes, 32 F.3d at 765. Whether Page's decision to believe Ragno's statement was wise or even competent, or whether Page drew the wrong conclusion about Smith's meaning when he said he would "go back to acting the way he used to," is of no legal relevance. This court is only concerned if those decisions and conclusions mask an intent to discriminate against Smith because of his age, because:

[W]e do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA does not interfere. Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior.

Brewer v. Quaker State Oil Ref. Co., 72 F.3d 326, 332 (3d Cir.1995) quoting McCoy v. WGN Continental Broadcasting Co., 957 F.2d 368, 373 (7th Cir.1992). The only inquiry at step three of the paradigm

14

is whether Smith has pointed to such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in Page Foam's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence,' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons." <u>Fuentes</u>, 32 F.3d at 765.  He has not.

Pursuant to 28 U.S.C.§ 636(b)(1), the parties are given notice that they have ten days to serve and file written objections to this Report and Recommendation.

DATE: _____8 September 2005_____          _____
                                         Keith A. Pesto
                                         United States Magistrate Judge
cc:
        Jerome J. Kaharick, Esq.
        Wallace Building, Suites 301-302
        406 Main Street
        Johnstown, PA 15901

        Roberta Binder Heath, Esq.
        3366 Lynnwood Drive
        P.O. Box 1311
        Altoona, PA 16603-1311